UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

CANDACE COLEMAN

    Plaintiffs,

-vs-

LAFONTAINE CADILLAC, BUICK, GMC, INC.,
d/b/a LAFONTAINE USED CAR KING,

    Defendant.

_____

## COMPLAINT AND JURY DEMAND

### JURISDICTION

1. This court has federal question jurisdiction pursuant to 28 U.S.C. §§ 1331, 1337.

2. As to any supplemental, (State), claims set forth herein, there are no exceptional circumstances or other compelling reasons for this Court to decline jurisdiction and the interests of justice would best be served if this Court heard these claims along with the federal claims.

### PARTIES

3. The Plaintiff in this lawsuit is Candace Coleman, ("Plaintiff" or "Ms. Coleman"), who reside in Linden, Michigan in Genesee County.

4. The Defendant to this lawsuit is LaFontaine Cadillac, Buick, GMC, Inc., d/b/a LaFontaine Used Car King, ("LaFontaine"), which is a Michigan corporation doing business in Michigan and which by statute and condition of licensing, may be served through its resident agent, Michael T. LaFontaine, 4000 Highland Rd., Highland, MI, 48357.

5. At all relevant times LaFontaine -- in the ordinary course of its business -- regularly extended or offered consumer credit for which a finance charge is, or may be imposed or which,

by written agreement is payable in more than four installments and is the person to whom the transaction which is the subject of this action is initially payable.

6.  LaFontaine is a creditor under TILA, 15 U.S.C. § 1602(g) and regulation Z § 226.2(a)(17).

7.  LaFontaine is a creditor under the Equal Credit Opportunity Act, 15 U.S.C. §§ 1691 et seq and Regulation B.

## VENUE

8.  The transactions and occurrences which give rise to this action occurred in Genesee County.

9.  Venue is proper in the Eastern District of Michigan.

## GENERAL ALLEGATIONS

10. On October 23, 2015, Plaintiff was involved in an automobile accident which totaled her truck.

11. Plaintiff is a single mother with a full-time job, and needs dependable transportation in connection with her job, as well as relating to her responsibility to drop off and pick her son up from school, and for as general transportation. Accordingly, she had to obtain a replacement vehicle as soon as possible, after the above-referenced automobile accident.

12. Since LaFontaine is in close proximity to her home, Plaintiff determined that this was her best and quickest opportunity to purchase a replacement vehicle.

13. Plaintiff knew that she had a poor credit rating, and not a lot of money for a down payment, so she was doubtful that she would be able to get financed or purchase a dependable replacement vehicle.

14. To her surprise, when she went to Defendant's dealership location in Highland, Michigan, she was advised that she was approved for $10,000 in financing.

15. On October 26, 2015 Plaintiff stopped by the Defendant's Fenton location and met a salesman, ("Matt"), who advised her that he could sell her a vehicle, and that she should "come back tomorrow."

16. On October 27, 2015 Plaintiff met with Matt who advised Ms. Coleman she was already approved for $10,000, and they looked at some vehicles. Matt initially advised Plaintiff that she qualified for a Kia. However, apparently the finance department excluded this vehicle and Plaintiff was then told that she qualified for a Chevrolet Impala, if should could make a $1,000 down payment.

17. Accordingly, Plaintiff arranged for her parents wired her $1,000 for the down payment and she went back to the dealership. However, Matt advised Plaintiff that the Impala was sold, and he suggested a Chrysler 200, but for this vehicle he would need a $1,500 down payment.

18. Plaintiff advised Matt that she did not have an extra $500, however the Assistant Manager, ("Brian"), assured Plaintiff that would accept installments of $250 each week for the next two weeks to pay the additional $500. Plaintiff gave Matt the initial $1,000 that she had, but was not provided with a receipt for this money and didn't sign any other documents at this point.

19. Up to this point in time, Plaintiff was not asked about her credit qualifications or income, and did not fill out a credit application or otherwise qualify for credit.

20. On October 29, 2015 Plaintiff received a text from Matt indicating the vehicle, (Chrysler 200), was ready. Plaintiff went to the dealership and waited for hours without understanding

what the delay was about. Finally Plaintiff met with ("Phil") in the finance department and signed multiple documents which she never received a copy of, and doesn't have a copy of to this day.

21. Plaintiff took delivery of the Chrysler 200 and left the dealership on October 29, 2015, but the only document she received was a temporary license plate. Plaintiff did not receive the Buyer's Guide, which is a violation of the law as outlined below, and did not receive a copy of the finance agreement or terms of financing, which is a violation of the law as outlined below. Moreover, the terms of financing, if shown to Plaintiff, were subsequently altered or discarded by Defendant in violation of the Truth in Lending Act, as outlined below.

22. On November 2, 2015 Plaintiff received a text from Matt, who advised her she needed to come in to the dealer to pick up her license plate, and fill out a document to verify Plaintiff's income. Plaintiff did come in that day and filled out an unknown document, which she didn't get a copy of. However, Matt was dishonest about the license plate, because the dealer did not have it and did not provide it as promised on that day. On this occasion Plaintiff also asked for a set of extra set of keys to the vehicle which were previously promised to her. Matt advised Plaintiff that the keys were already "mailed out" to her. However, this was also dishonest because Plaintiff has not received a second set of keys.

23. On November 5, 2015, Plaintiff received a text from Matt to come to the dealer indicating: "it has to do with your car." Plaintiff went to the dealer as requested and was placed on a conference call with the "finance company", who Plaintiff believes was "Chrysler Credit." Plaintiff was asked questions by the finance company representative regarding Plaintiff's landlord, her income and other items on her credit application. Plaintiff answered all the

questions honestly.

24.     Plaintiff was confused by the questions referenced above, because all of this information was previously provided to the dealer. Plaintiff asserts that Defendant either changed information on Plaintiff's credit application or held back certain information from the prospective finance company that amounts to fraud, as further alleged below.

25.     A few hours later on November 5, 2015, Matt texted Plaintiff again and advised her that the finance company does not want to finance the car.  Matt also asked Plaintiff to call her parents to see if they would co-sign for the vehicle.   This was devastating news to Plaintiff who reasonably thought she was already financed and she had already taken delivery of the vehicle. Moreover, Plaintiff felt that since she had provided the dealer with all of her financial information on October 29, 2015, it was unfair, unusual and fraudulent that she was now for the first time advised by Matt that she "didn't make enough money" to purchase the subject vehicle.

26.     Plaintiff then went to the dealership to talk to Matt and talk to the manager.   Plaintiff was advised that the manager ("Tommy") was busy. Plaintiff couldn't wait for long because she had to pick her son up from school, so she left the dealership at that time with no resolution.

27.     Since November 5, 2015, Matt has attempted to contact Plaintiff on multiple occasions requesting additional pay stubs and threatening to "repossess" Plaintiff's vehicle. Plaintiff has reasonably refused to return the vehicle.

28.     On November 11, 2015 Plaintiff contacted the dealership to see if she could get a copy of the documents she signed and got the voice mail. Plaintiff left a voice message requesting a copy of everything she signed. There has been no response.

29. Automobile dealers are required by law to provide consumers with a copy of every document signed at the time of signing. Defendant never provided Plaintiff with any documents that she signed or reviewed, at the date of the sales transaction, or at any time thereafter.

30. Plaintiff provided a $1,500 down payment relating to the purchase of the subject 2009 Chrysler 200 vehicle, and, upon information and belief, agreed to make monthly finance payments to purchase the vehicle.

31. Plaintiff doesn't know what she signed, but upon information and belief, it is believed that among the documents signed was an Application for Michigan Title & Registration Statement (RD-108 form) which lists Chrysler Credit, LTD, ("CCAP"), as the "First Secured Interest."

32. Upon information and belief Plaintiff was not properly approved for financing by any bank or other party on October 29, 2015, (or at any time), but nonetheless took delivery of the above referenced vehicle.

33. Upon information and belief, Plaintiff was not advised by LaFontaine that other creditors (other than CCAP) were provided with Plaintiff's personal information. When Plaintiff took delivery of the vehicle she thought she was financed, and to her knowledge did not authorize Defendant to access or share her credit information with other creditors.

34. When a car dealer leases a vehicle and delivers it to a consumer without approval for financing or credit, this is known as a "Spot-Delivery" or a "yo-yo" sale.

35. A "Spot Delivery" is illegal in Michigan, as outlined below.

36. A "yo-yo" sale violates the Truth in Lending Act and is otherwise illegal as alleged below.

37. Plaintiff was not aware of the consumer protection laws or financing requirements, and thus when she took delivery of the subject vehicle she thought she was properly financed and the deal was final.

38. Accordingly, upon information and belief, the RD-108, confirming CCAP financing, was fraudulently filed with the State of Michigan to obtain the title, and the credit application or other information communicated by LaFontaine to CCAP was also falsified by LaFontaine.

39. As a result of the above, the title relating to the subject vehicle is either fraudulent or has been unlawfully delayed by Defendant. Plaintiff has legitimate concerns that she is now driving a vehicle which is not road legal and/or may result in subjecting her to liability or damages.

40. As noted above, LaFontaine has contacted Plaintiffs several times to either get Plaintiff to return the vehicle, or in an attempt to get her approved for financing (which Defendant confirmed had already occurred), which constitutes a "spot-delivery", and which is illegal as outlined below.

41. Moreover, Plaintiff was not provided with legal and adequate information regarding the terms of financing of the subject vehicle as mandated by the Truth-In-Lending Act, (TILA).

42. Plaintiff has been confused and emotionally stressed by this fraudulent transaction. Plaintiff's honest efforts to work with the dealer and purchase a used vehicle has resulted in confusion and stress. As a result, Plaintiff has now been forced to retain counsel to protect her rights.

43. Upon information and belief, LaFontaine illegally continued to contact finance company's to obtain financing after Plaintiff took delivery of the subject vehicle.

44. To the extent that Plaintiff signed any document which purport to limit LaFontaine's

liability relating to the above facts and legal allegations below, Plaintiff asserts that they are not binding because Defendant fraudulently failed and refused to provide Plaintiff with ANY documents whatsoever. Moreover any document which purports to permit LaFontaine to conduct a spot delivery, yo-yo sale, or consider the financing offered as conditional is unlawful and has been explicitly prohibited in the Sixth Circuit. {(see *Patton v. Jeff Wyler Eastgate, Inc.* 608 F.Supp.2d 907 (2007)}.

45. Due to defendant's fraud, negligence, violation of statute and other violations of law outlined below, Plaintiffs have been forced to file this lawsuit and have been damaged as outlined below.

## COUNT I - TRUTH IN LENDING ACT

46. Plaintiff incorporates the preceding allegations by reference.

47. Defendant failed to accurately disclose the applicable finance charge as required by 15 U.S.C. § 1638 and Reg Z § 226.18(d)

48. Defendant failed to accurately disclose and itemized the amount financed in violation of 15 U.S.C. § 1638, Reg Z § 226.18(b), and Reg Z § 226.18(c).

49. As a consequence of failing to accurately state the actual finance charge, Defendant also misstated the applicable "APR" in violation of 15 U.S.C. § 1338 and Reg Z § 226.18(e).

50. Defendant failed to accurately disclose the applicable "APR" as required by 15 U.S.C. § 1638; Reg Z § 226.18(32); Reg Z § 226.22.

51. Defendant was required to make the disclosures required by 16 U.S.C. § 1638 prior to consummating the sale of the vehicle.

52. Those disclosures were required to be made in writing, in form that could be kept by the

consumer so that consumers may shop for credit prior to engaging in a credit transaction.

53. Defendant failed to make those disclosures in a timely fashion, or ever, in violation of 15 U.S.C. § 1638(a)(4).

54. Defendant is liable to Plaintiff for actual and statutory damages to be determined at trial, costs, and statutory attorney fees in accordance with 15 U.S.C. § 1640.

55. Upon information and belief, Defendant also provided financial disclosures that were meaningless because the disclosures were subject to unilateral change by Defendant after the Plaintiff signed the Retail Installment Contract, ("RISC"), agreeing to the offered terms.

56. Plaintiff asserts that the RISC terms presented to her were entirely illusory because, when she signed a RISC agreeing with the terms, Defendant considered each and every provision in the RISC to be non-final and subject to change at Defendant's whim.

57. Upon information and belief, Defendant invariably violated TILA and Regulation Z in this sale by using illusory TILA disclosures in its RISCs including the APR, the Finance Charge, the amount financed, the total of payments, the total sale price and every other term in the RISCs because, at the time of consummation as defined by TILA, the disclosures were subject to subsequent change or cancellation at defendant's sole and arbitrary discretion.

WHEREFORE, Plaintiff is entitled to damages under TILA, for actual and statutory damages to be determined at trial, costs, and statutory attorney fees in accordance with 15 U.S.C. § 1640.

## COUNT II - EQUAL CREDIT OPPORTUNITY ACT

58. Plaintiff incorporates the preceding allegations by reference.

59. At all relevant times Defendant -- in the ordinary course of its business -- operated a

motor vehicle sales establishment which in the ordinary course of business sold motor vehicles to consumers like Plaintiff.

60. Following the receipt of Plaintiff's complete application for credit by Plaintiffs, Defendant was required to make a credit decision within 30 days.

61. Based upon that credit application, Defendant first approved Plaintiff's for credit, and then revoked that credit by failing to secure third party financing and demanding that Plaintiff provide additional information and a co-signor after the sale and delivery of the subject vehicle.

62. These actions constituted adverse action for purposes of the ECOA.

63. Defendant provided false reasons or no reasons for the adverse actions.

64. Defendant has no policies or procedures in place to comply with the ECOA and Regulation B.

65. This refusal to provide an accurate adverse action notice constituted a violation of the ECOA, 15 U.S.C. § 1691 et seq. by Defendant.

66. The initial credit approval by Defendant was false and they knew it to be false at the time it was issued.

67. Plaintiff suffered damages by these violations of ECOA in an amount to be determined by a jury.

## COUNT III - MOTOR VEHICLE SALES FINANCE ACT

68. Plaintiffs incorporate the preceding allegations by reference.

69. Defendant failed to properly complete all necessary terms of the installment contract as required by M.C.L. §492.101 et seq.

70. Plaintiffs have suffered the damages set forth above by reason of the Defendant's

violations of the MVSFA.

## COUNT IV – MISREPRESENTATION/FRAUD

71. Plaintiff incorporates the preceding allegations by reference.

72. Defendant made material representations, written, verbally, and by omission, which are outlined above which were intended to induce the reliance of Plaintiff, including but not limited to:

    a. Plaintiff would be timely and properly financed;

    b. Any and all documents required to make the sale final, binding and legally legitimate would be filed in a timely fashion;

    c. Plaintiff would be properly licensed and titled to drive the subject vehicle legally;

    d. That Defendant would refrain from soliciting financing for the subject transaction and refrain from causing inquiries on Plaintiffs' credit report;

    e. That Plaintiff was accepted for final financing and that no other information or duties were required;

    f. That Plaintiff would receive a license plate and an extra set of keys;

    g. That Plaintiff did not need a co-signor;

    h. That if Plaintiff made the $1,500 down payment and signed the requested documents, the subject vehicle would be finally sold to her;

    i. All of the other misrepresentations and/or omissions outlined in the general allegations above.

73. The material representations and/or omissions did induce the reasonable reliance of Plaintiff.

74. Defendant made the material representations and/or omissions with actual knowledge of their falsity.

75. Defendant made the material representations and/or omissions with reckless disregard to their truth or falsity.

76. Defendant made the material representations and/or omissions even though it should have known that they were false or should have been disclosed.

77. These actions constitute misrepresentations upon Plaintiff by Defendant.

78. Plaintiff has suffered damages as a result of these misrepresentations, including emotional distress, stress, loss of sleep, embarrassment and humiliation.

## COUNT V – FAIR CREDIT REPORTING ACT

79. Plaintiff incorporates the preceding allegations by reference.

80. The Fair Credit Reporting Act requires auto dealers that lend money to provide "risk based pricing notices" to consumers under 15 U.S.C. §1681m(h).

81. The 2003 FACTA amendments to the FCRA require lenders to provide "risk based pricing notices" or RBPNs to consumers per 15 U.S.C. Sec. 1681m(h).

82. Under that provision, and under the FTC's related regulations (see 16 CFR Sec. 640.1 et seq.; 12 CFR Sec. 222.70 et seq.) any lender who, after consulting a credit report and a credit score, offers a consumer anything less than the most favorable terms possible, must give the consumer an RBPN that discloses what its issues with the report were and what the credit score was.

83. When an auto dealer, like LaFontaine contacts more than one lender to see if they will offer the consumer a loan, and then sets the consumer up with a loan from one of them, the FTC regulations require the auto dealer, and not the lenders, to provide the consumer with an RBPN.

84. The rationale behind this rule is to insure that a consumer, like Plaintiff, in this kind of situation will get an RBPN from someone she recognizes (the dealer) as opposed to multiple notices from entities that she doesn't recognize (the behind-the-scenes lenders). Also, it prevents lenders who didn't want to give consumers RBPNs from routing their loans through dealers as a way of avoiding the RBPN requirement. (See *National Automobile Dealers Association v. Federal Trade Commission*, 864 F. Supp. 2d 65, at 78-80).

85. LaFontaine contacted more than one lender regarding Plaintiff and unlawfully failed to provide Plaintiff with the RBPN.

86. This failure to provide a risk based pricing notice constituted a willful violation of the FCRA, 15 U.S.C. § 1681n.

87. Plaintiff suffered statutory and actual damages as the result of defendant's failed FCRA notice, including emotional distress, loss of sleep, stress, mental anguish, along with attorney fees and costs.

88. WHEREFORE, Plaintiff is entitled to damages as authorized under the Fair Credit Reporting Act for both willful and negligent violations.

## COUNT VI – BREACH OF CONTRACT

89. Plaintiff incorporates the preceding allegations by reference.

90. The parties agreed that if Plaintiff made a down payment and committed herself to executing a purchase and finance contract which bound her to further payments and other legal obligations, that LaFontaine would deliver vehicle and title, with appropriate financing.

91. The failure of LaFontaine to deliver conforming goods, title, and financing constitutes a material breach of contract.

92. The parties agreed that Plaintiff would be timely and properly financed.

94. The parties agreed that any and all documents required to make the sale final, binding and legally legitimate would be filed in a timely fashion.

94. The parties agreed that Plaintiff would be properly licensed and titled to drive the subject vehicle legally.

95. The parties agreed that Defendant would refrain from soliciting financing for the subject transaction and refrain from causing inquiries on Plaintiffs' credit report.

96. The parties agreed that Plaintiff was accepted for final financing and that no other information or duties were required.

97. The parties agreed that Plaintiff would receive a license plate and an extra set of keys;

98. The parties agreed that Plaintiff did not need a co-signor to accomplish the sale.

99. The parties agreed that if Plaintiff made the $1,500 down payment and signed the requested documents, the subject vehicle would be finally sold to her.

100. LaFontaine violated all of the above agreements between the parties.

101. Plaintiff has suffered damages as a result of this breach of contract, as outlined in this Complaint.

102. Plaintiff suffered damages and continues to suffer damages as a result of this breach of contract, including but not limited to constructive repossession, loss of down payment, in addition to emotional distress, attorney fees and court costs.

## COUNT VI – MOTOR VEHICLE INSTALLMENT SALES CONTRACT ACT

103. Plaintiff incorporates the preceding allegations by reference.

104. Defendant failed to properly complete all necessary terms of the installment contract as

required by M.C.L. § 566.302 *et seq*.

105.  Defendant failed to properly complete all necessary terms of the installment contract as required by M.C.L. § 566.302 *et seq*.

106.  Plaintiff suffered damages in the amount of the finance charge imposed, that amount being the amount Plaintiffs paid to Defendant.

## COUNT VII – MOTOR VEHICLE CODE VIOLATIONS

107.  Plaintiff incorporates the preceding allegations by reference.

108.  Defendant violated the Motor Vehicle Code.

109.  Defendant failed to apply for title within 15 days of delivering the vehicle to Ms. Chamberlain as required by M.C.L. §257.235.

110.  Defendant's failure to effectively transfer title constituted a violation of M.C.L. §257.235.

111.  Plaintiff may void the contract of sale as a result LaFontaine's violation of the Motor Vehicle Code under M.C.L. §257.251.

112.  Defendant failed to provide Plaintiff with a copy of all signed documents as mandated by the Motor Vehicle Code.

113.  Plaintiff has suffered damages as the result of Defendant's violation of this statute.

## COUNT I
## BREACH OF WARRANTIES

114.  Plaintiff incorporates by reference all facts and allegations set forth in their complaint.

115.  Defendant is a merchant with respect to motor vehicles under MCL 440.2104 as well as the Uniform Commercial Code, ("UCC").

116. The aforementioned motor vehicle purchased by Plaintiff was subject to implied warranties of merchantability under MCL 440.2312, and UCC 2-312.

117. Defendant, to induce said sale, also made certain express warranties and representations to Plaintiff, both orally and in writing and through their advertising and conduct.

118. Said warranties of title and representations included, but were not limited to, the following:

> a) the title conveyed shall be good, and its transfer rightful; and
>
> b) the goods shall be delivered free from any security interest or other lien or encumbrance of which the buyer at the time of contracting has no knowledge;
>
> c) the goods are delivered free of the rightful claim of any third person by way of infringement or the like

119. Said vehicle was not as warranted and represented due to the fact that Defendant never delivered a good and unencumbered title to the Plaintiff.

120. As a result of the unlawful transfer, Plaintiff has lost the benefit of her bargain and the vehicle cannot hold reasonable resale value, and cannot be legally driven by Plaintiff on Michigan roads.

121. The vehicle's title defects have not been reasonable or seasonably cured.

122. As a direct and proximate result of Defendant's breach of warranty of title, Plaintiff has suffered damages, including but not limited to: the cost of the vehicle, loss of time, inconvenience and aggravation, interest and sales tax, insurance, and in addition, Plaintiff will suffer future damages, including but not limited to the cost of covering the contract elsewhere, aggravation and inconvenience, together with costs and attorney fees in attempting to obtain relief from Defendant's wrongful conduct.

WHEREFORE, Plaintiff prays for equitable damages including specific performance and an Order compelling Defendant to pass good title, or in the alternative voiding the underlying transaction and/or returning Plaintiff to her pre-contract position. Plaintiff also prays money damages in whatever Plaintiff is found to be entitled, plus interest, costs and reasonable attorney fees.

### REQUEST FOR RELIEF

Plaintiff requests that this Honorable Court grant the following relief

1. Assume jurisdiction over this case including all supplemental claims.

2. Award actual damages.

3. Award statutory and punitive damages.

4. Award statutory costs and attorney fees.

5. Award damages for emotional distress and mental anguish.

6. Award any other relief which is appropriate fair and just.

7. And, award equitable/declaratory relief including an Order compelling Defendant to return Plaintiffs' down payment, or provide financing and good title, as well as retract any derogatory credit reporting regarding either Plaintiff, and refrain from any further use of Plaintiffs personal information or credit reports.

Respectfully Submitted,

**/s/ Adam S. Alexander**
ADAM S. ALEXANDER (P53584)
ANDREW R. MIKOS
Attorney for Plaintiffs

|  |  |
|---|---|
|  | 17200 W. Ten Mile Rd., Ste. 200 |
|  | Southfield, MI 48075 |
|  | adalesq@gmail.com |
| November 13, 2015 | (248) 246-6353 |